# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Crim. No. 07-158 (JR)** |
| **v.** | : | |
| | : | |
| **MATTHEW A. FIELDS,** | : | **Motions Hearing: October 26, 2007** |
| **Defendant.** | : | |
| | : | |

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION
## TO SUPPRESS EVIDENCE AND STATEMENTS

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully opposes Defendant's Motion to Suppress Evidence and Statements. In support of its opposition, the Government relies on the following points and authorities and such points and authorities as may be cited at a hearing on the motion.

## FACTUAL BACKGROUND

On Wednesday, April 4, 2007, at approximately 4:15 pm in the afternoon, Metropolitan Police Department Officers Tony Mason and Kief Green established an observation post in the 1700 block of T Street, S.E., in Washington, D.C. This area of the city is known for the sale of crack cocaine and marijuana; three shootings, two of which were fatal, had occurred in the immediate surrounding area in the months prior to this operation. The officers targeted this area on April 4th because they had received an anonymous complaint about drug dealing on that block earlier in the day. At the time the officers established their observation post, there were approximately ten young men milling about in small groups on the block.

At approximately 4:30 pm, Officers Mason and Green observed a black female enter the block. She walked directly past the officers as she did so, and tried to make eye contact with them. When they ignored her, she continued on towards the defendant, who was standing approximately

25 feet away from the two officers. From their vantage point, the officers had an unobstructed and clear view of the defendant. They watched as the woman engaged in a brief conversation with the defendant, and then observed her hand the defendant U.S. currency.

Upon receiving the money, the defendant walked to a green Buick automobile, bearing D.C. tag BZ 2930, which was parked along T Street approximately 35 feet away from the officers in the observation post. The officers watched as the defendant got into the passenger side of the car. Approximately 30 seconds later, he emerged from the vehicle and returned to the woman. The officers saw the defendant hand a small object to the woman. The woman promptly left the area, walking away from the officers in the observation post.

The officers broadcast a lookout for the defendant, who was wearing a green coat and black pants, and the woman. Officers Somalli Fuller and S.F. Brackett were the first two officers to arrive on the scene. (The four other officers who were part of the "arrest team" that afternoon were delayed by traffic and did not arrive in a timely fashion.) Officers Fuller and Brackett made contact with the approximately eight young men who remained in the block when they arrived. Officer Fuller went straight to the sole individual matching the lookout description. Once he made contact with him, Officer Mason confirmed that the individual – the defendant herein – was the same person he had observed engage in the apparent drug transaction.

Upon receiving this confirmation, Officer Fuller – who is a former beat officer in this area and who was aware of the prior history of violence and drug dealing there – performed a pat-down of the defendant's person and removed his car keys from his pocket. Officer Fuller was then directed to the car by Officer Mason; the observation post officers continued to communicate with the arrest team over a secure communications channel.

-2-

Officer Fuller approached the car and peered into the passenger window. He observed a yellow bag – of the type phone books are delivered in – on the floor of the car. Inside of the bag, which was lying so that it was partially open, he saw what he recognized, based on his training and experience, to be marijuana. Officer Fuller then used the defendant's keys to open the passenger-side door. As Officer Fuller was opening the door to the car, he heard the defendant state repeatedly and loudly: "You can't go in my car. You have no probable cause to search my car. Get out of my car." Upon opening the car door, Officer Fuller immediately smelled a scent that he associated with marijuana. He then nudged the bag open further to confirm his initial observation that the substance in the bag appeared to be marijuana. Officer Fuller removed the yellow bag form the car, performed a field test on the drugs and, after learning that the substance tested positive for THC, placed the defendant under arrest. A routine, post-arrest search of the defendant's person revealed $129 in U.S. currency in his jacket pocket.

Officers then conducted a search of the defendant's car. Inside of the yellow bag on the passenger's side floorboard, officers found 12 zips and six plastic-wrapped bundles of marijuana and two zips containing a total of 20 ecstacy pills. Also on the passenger's side floorboard, the officers recovered two cans with false bottoms, one concealing 504 ecstacy pills and the other concealing five zips of crack cocaine. On the driver's side floorboard, officers found two additional bags of marijuana. Under the driver's seat, officers found a loaded .40 caliber Glock 22 handgun and two additional plastic bags of marijuana. Officers recovered $31 in U.S. currency, three ecstacy pills, and 18 zips of crack cocaine from inside of the glovebox. Inside of the center console, officers found an additional ziplock of crack cocaine. Scattered throughout the main compartment of the car, the officers found $546 in U.S. currency. The search of the trunk yielded a digital calculator and

another zip of marijuana. Finally, within the main compartment of the car, officers also found the defendant's wallet, which contained his driver's license, a car registration certificate in the name of Patricia Fields, as well as a living will, a PEPCO bill, and a school paper from Bowie State University in the defendant's name.

Later that day, officers interviewed Ms. Patricia Fields, who identified herself as the defendant's mother. Ms. Fields stated that she purchased the vehicle for the defendant, and that he drove the car all of the time.

## ARGUMENT

The defendant has moved this court to suppress the tangible evidence recovered in this case and to suppress his identification because he "did not do anything that would lead a reasonable person to believe that he had committed . . . a crime." (Defendant's Motion at 2.) Based on the observations of the officers in the observation post, there was a reasonable, articulable suspicion that the defendant was engaged in an illegal drug transaction. The stop of his person was therefore an appropriate exercise of authority. Moreover, the search of the defendant's car was fully justified by Officer Fuller's observation of marijuana in plain view. The defendant's motion to suppress tangible evidence and the resulting identification should therefore be denied.

## I.    There Was Reasonable, Articulable Suspicion to Stop the Defendant.

The Supreme Court case of *Terry v. Ohio*, 392 U.S. 1 (1968) permits police officers to temporarily "seize" or detain a person where the officer has a reasonable, articulable suspicion that "criminal activity may be afoot." *Id*. at 30. The officer need not be certain that the citizen is engaged in criminal activity; reasonable suspicion "is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence." *Illinois v. Wardlow*,

528 U.S. 119, 123 (2000).  Thus, a *Terry* stop may be conducted simply because of "the need to

'check out' a reasonable suspicion."  *United States v. Clark*, 24 F.3d 299, 303 (D.C. Cir. 1994).

Whether an officer has a reasonable articulable suspicion to conduct a stop is determined by

the totality of the circumstances.  Courts may not scrutinize each possible factor upon which the

officer relied on in a separate and distinct manner.  *United States v. Sokolow*, 490 U.S. 1, 8-9 (1989).

"An officer on the beat does not encounter discrete, hermetically sealed facts," and for that reason

while "a single factor might not itself be sufficiently probative of wrongdoing to give rise to a

reasonable suspicion, the combination of several factors – especially when viewed through the eyes

of an experienced officer – may."  *United States v. Edmonds*, 240 F.3d 55, 59-60 (D.C. Cir. 2001).

Here officers Mason and Green observed the defendant engage in what appeared, based on

their training and experience, to be an apparent drug transaction.  Two factors contributed

significantly to their conclusion.  First, the interaction took place in a high drug area, known for the

sale of crack cocaine and marijuana.  Earlier that day, MPD had received an anonymous citizen

complaint about drug activity in the area.  While mere presence in a high-crime area alone would be

insufficient to establish reasonable suspicion, the probative value of this factor is well-established.

*Illinois v. Wardlow*, 528 U.S. 119, 124 (2000); *United States v. Brown*, 334 F.3d 1161, 1165 (D.C.

Cir. 2003); *United States v. Edmonds*, 240 F.3d 55, 60 (D.C. Cir. 2001).

Second, the officers observed the female buyer walk into the block and attempt to make eye

contact first with the officers themselves and then, when that attempt was fruitless, with the

defendant.  As the officers watched her, she approached the defendant and handed him an unknown

amount of U.S. currency.  The defendant then walked to his car, opened the passenger-side door,

retrieved an item, and returned to where the woman was standing. After the defendant returned to the woman, he handed her an item, and she immediately left the area.

Although the D.C. Circuit has suggested that "simply receiving an object from another person" is a common occurrence for which there could be many explanations, *United States v. Johnson*, 212 F.3d 1313, 1316 (D.C. Cir. 2000), the exchange of money in return for an item that the defendant had to retrieve from his car, coupled with the buyer's immediate retreat from the area, caused the officers to believe that a drug transaction had just occurred. *See United States v. Garrett*, 959 F.2d 1005, 1007 (D.C. 1992) (finding reasonable articulable suspicion based on hand-to-hand transaction when combined with officer's experience, area of transaction, and information matching citizen tip); *United States v. Williams*, 139 F.3d 628, 629-30 (8th Cir.1998) (concluding that officer's observation of exchange of money for items produced from defendant's pocket and held out to another, who selected from the offering, added to reasonableness of suspicion); *United States v. Lender*, 985 F.2d 151, 154 (4th Cir.1993) (determining that group of men gathered around defendant looking down into his open palm increased reasonableness of officer's suspicion); *United States v. Jenkins*, 530 F. Supp. 8, 9 (D.C.D.C. 1981) (finding reasonable articulable suspicion based on a two-way exchange alone).

The totality of the circumstances (the high drug area, the recent citizen complaint, the actions of the female buyer, the hand-to-hand transaction, and the defendant's retrieval of the item from his car) viewed through the eyes of an experienced officer, provided a reasonable, articulable suspicion that the defendant was engaged in criminal activity.

**II.    The Search of the Green Buick Was Consistent with the Fourth Amendment.**

The search of the green Buick and the subsequent seizure of cocaine base, marijuana, the handgun, money, the defendant's driver's license and other personal paperwork were consistent with the Fourth Amendment. In *Coolidge v. New Hampshire*, 403 U.S. 443, 468 (1971), a plurality of the Supreme Court held that the "plain view" doctrine permits the warrantless seizure of private possessions where three requirements are satisfied. First, the police officer must lawfully make an "initial intrusion" or otherwise properly be in a position from which he can view a particular area. *Id.* at 465-68. Second, the officer must discover incriminating evidence "inadvertently," that is, the officer may not "know in advance the location of [certain] evidence and intend to seize it." *Id.* at 470. Third, it must be "immediately apparent" to the police that the items they observe may be evidence of a crime, contraband, or otherwise subject to seizure. *Id.* at 466.

Applying these rules, the Supreme Court held in a plurality opinion in *Texas v. Brown*, 460 U.S. 730 (1983), that an officer who stopped a driver at a license checkpoint properly seized a party balloon that dropped from the driver's hand. In that case, a police officer stopped Clifford Brown at a checkpoint and asked him for his license. At approximately the same time, the officer shined his flashlight into the car and saw an opaque party balloon, knotted about a half-inch from the tip, drop from Brown's hand. *Id.* at 733. The officer then positioned himself so that he could see into the glove compartment when Brown opened it. Inside the compartment were several small plastic vials, some loose white powder, and an open bag of party balloons. Brown told the officer that he had no license in his possession. The officer then asked Brown to exit the car, reached into the vehicle, and picked up the balloon that had fallen from Brown's hand, which turned out to contain heroin. The officer

testified at trial that he knew from previous experience that narcotics frequently were packaged in such balloons. *Id.* at 734.

The Supreme Court concluded that the warrantless seizure of the balloon was proper. First, the Court ruled, the officer lawfully looked into Brown's car:

> The general public could peer into the interior of Brown's automobile from any number of angles; there is no reason [the police officer] should be precluded from observing as an officer what would be entirely visible to him as a private citizen. There is no legitimate expectation of privacy shielding that portion of the interior of an automobile which may be viewed from outside the vehicle by either inquisitive passersby or diligent police officers. In short, the conduct that enabled [the officer] to observe the interior of Brown's car and of his open glove compartment was not a search within the meaning of the Fourth Amendment.

*Id.* at 740. Second, the Court held that *Coolidge*'s requirement that it be "immediately apparent" that the items viewed were evidence of a crime, contraband, or otherwise subject to seizure was met because the officer "possessed probable cause to believe that the balloon in Brown's hand contained an illicit substance." *Id.* at 742. The officer, the Court said, had testified that he was aware, both from his participation in previous narcotics arrests and from discussion with other officers, that balloons tied in the manner of the one possessed by Brown frequently were used to carry narcotics. *Id.* at 742-43. Finally, the Court ruled that the "inadvertence" element of the plain view doctrine was satisfied because "although the officers no doubt had an expectation" that some of the cars they stopped would contain illegal drugs, there was "no suggestion that the roadblock was a pretext whereby evidence of narcotics violation might be uncovered in 'plain view' in the course of a check for driver's licenses." *Id.* at 743-44.

*Brown* governs this case. Officer Fuller did nothing more than look into the windows of the Green Buick, something that any passerby could have done. The Government expects that at a

-8-

motions hearing on this matter, it will show that Officer Fuller is familiar with the appearance of

marijuana as a result of his extensive training and experience, and that he had probable cause to

believe, upon seeing open yellow bag containing a green weed-like substance in the green Buick, that

it contained marijuana.  And although Officer Fuller and his colleagues may have expected that they

might find contraband in the green Buick, there is no evidence "that they had anything beyond this

generalized expectation." *Id.* at 744. The plain view doctrine thus justified the warrantless seizure

of the yellow bag full of marijuana from the passenger compartment of the green Buick. *See, e.g.*,

*United States v. Castellanos*, 731 F.3d 979, 984 (D.C. Cir. 1984) (concluding that seizure of bag

containing a white powdery substance in suspect's pocket that became visible when suspect stepped

from car was proper under plain view doctrine); *United States v. Gibson*, 636 F.2d 761, 763-64 (D.C.

Cir. 1980) (upholding search of purse into which officers had witnessed suspect placing packets

containing a white substance). Accordingly, the marijuana recovered from the yellow bag in this case

should not be suppressed.

Once Officer Fuller saw the marijuana, he had probable cause to believe that the green Buick

contained contraband, and therefore could search it without a warrant. Because motor vehicles are

both mobile and highly regulated, where there is probable cause to believe a vehicle contains

contraband or evidence, police officers need not obtain a warrant to search it. *E.g.*, *New York v.

Class*, 475 U.S. 106, 112-14 (highly regulated); *Carroll v. United States*, 267 U.S. 132, 160-62

(1925) (mobile). The scope of a warrantless search of an automobile extends to "every part of the

vehicle and its contents that may conceal the object of the search." *United States v. Ross*, 456 U.S.

798, 825 (1982). In this case, the object of the search was narcotics, which could have been

concealed in any number of places within the car, including the center console, the glove

compartment, and the trunk. Upon finding marijuana in the passenger compartment, the officers were entitled to search these areas. *E.g.*, *United States v. (Monte F.) Brown*, 374 F.3d 1326, 1329 (D.C. Cir. 2004) (concluding that presence of tools of crime on passenger seat gave "rise to a likelihood . . . that the driver . . . placed the fruits of his crime in the trunk"); *United States v. Rocky Lee) Brown*, 334 F.3d 1161, 1170 (D.C. Cir. 2003) (ruling that gun in passenger compartment "strongly supports" probable cause for search of trunk for guns, ammunition, and narcotics); *United States v. Turner*, 119 F.3d 18, 20 (D.C. Cir. 1997) (holding that finding even a personal-use amount of drugs in passenger compartment gave rise to probable cause to search trunk for more narcotics). Therefore, none of the evidence found in the green Buick should be suppressed.

### III.    The Search of Defendant Fields's Person Was a Proper Search Incident to Arrest.

It is well established that once police officers lawfully arrest a suspect, they may conduct a full search of his person. *Chimel v. California*, 395 U.S. 752, 763 (1969); *United States v. Wider*, 951 F.2d 1283, 1286 (D.C. Cir. 1991).  In order to be lawful, an arrest must be supported by probable cause.  *See United States v. Broadie*, 452 F.3d 875, 881 (D.C. Cir. 2006) ("The arrest was valid . . . if the officer had probable cause to believe [the defendant] had committed any crime.").

Here Officers Green and Mason had observed the defendant engage in a hand-to-hand transaction with a female buyer.  During the course of the transaction, the defendant retrieved an item from a nearby green Buick.  Officers Green and Mason then notified the arrest team to move in and broadcast a lookout for the defendant.  Officer Fuller entered the area, stopped the defendant,

and received confirmation that he had stopped the correct person.  He then conducted a protective

patdown, during which he removed the keys to the green Buick from the defendant's pocket.[1]

Subsequently, Officer Fuller approached the green Buick and observed marijuana in plain

view on the passenger's side floorboard.  Notably, as Officer Fuller approached the car and began

his search, the defendant confirmed repeatedly that the car was his, stating: "You can't go in my car.

You have no probable cause to search my car.  Get out of my car."[2]  Once he recognized the

substance in the car as marijuana, Officer Fuller had probable cause to arrest the defendant for

possession of narcotics.

During the search of the car, a loaded handgun, and multiple zips of crack cocaine and

marijuana were recovered.  The search of the car also confirmed the defendant's ownership; inside

---

[1]      The patdown of the defendant's person was lawful.  Under Terry and its progeny, a police officer may perform a protective frisk if he has reason to believe, based on "specific and articulable facts . . . taken together with rational inferences from those facts," that "he is dealing with an armed and dangerous individual." *Terry*, 392 U.S. at 21, 27.  Here the officers believed, based on the totality of the circumstances, that they had observed the defendant engage in a drug sale.  The D.C. Circuit has previously held that the link between guns and drugs is strong enough that officers may frisk suspected drug sellers for weapons. *United States v. Smart*, 98 F.3d 1379, 1384-85 (D.C. Cir. 1996); *United States v. Clark*, 24 F.3d 299, 304 (D.C. Cir. 1994).  Moreover, the scope of a Terry frisk is not limited to weapons, but rather to "concealed objects which might be used as instruments of assault." *Sibron v. New York*, 392 U.S. 40, 65 (1968) (emphasis added).  Thus, arguably, the officers would have been permitted to remove the defendant's keys from his pocket.

[2]      Defendant Fields has not moved to suppress his statements. *Miranda* is implicated only when two circumstances are both present: the defendant is in custody *and* under interrogation.  If a suspect is in custody, but volunteers a statement in the absence of interrogation, there is no *Miranda* issue even if the suspect was not given any advice of rights. *Miranda*, 384 U.S. at 478; *Rhode Island v. Innis*, 446 U.S. 291, 300 (1980). Interrogation includes not only direct questioning, but "any words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response." *Innis*, 446 U.S. at 301. Here the defendant was not in custody when he made these statements.  Moreover, these statements were made voluntarily and spontaneously in an effort to prevent Officer Fuller from searching his car. *Miranda* does not apply in this situation.

of the car were the defendant's driver's license, his living will, his PEPCO bill, and his schoolwork from Bowie State University. Based on this additional evidence, Officer Fuller also had probable cause to determine that the defendant possessed the cocaine and marijuana within the car with the intent to distribute it, and that the defendant had committed the Superior Court offense of carrying a pistol without a license.

The subsequent search of the defendant's person therefore was proper. Accordingly, the money found in the pocket of his coat during that search should not be suppressed.[3]

_____

[3]     Even if the court finds that the officers prematurely removed the defendant's keys from his pocket during the *Terry* frisk, the keys themselves "inevitably would have been discovered by lawful means." *Nix v. Williams*, 467 U.S. 431, 444 (1984). Here, Officer Fuller had probable cause to arrest the defendant as soon as he observed the marijuana lying on the floor of the car the defendant loudly proclaimed to be his. As the testimony at the hearing will establish, the officers engaged in this operation would – as a matter of routine practice – have conducted a complete search of the defendant's person pursuant to his arrest. *See Hudson v. Michigan*, 126 S. Ct. 2159, 2178 (2006) (inevitable discovery refers to discovery that would have occurred despite and independently of the unlawful behavior). Finally, even if the court were to suppress the keys, the exclusionary rule would not properly apply to the discovery of the marijuana, which was found in plain view within the car itself.

## CONCLUSION

WHEREFORE, Defendant Field's Motion to Suppress Evidence and Identification should be denied.

Respectfully submitted,

JEFFREY A. TAYLOR
United States Attorney

By:      /s/
JOCELYN S. BALLANTINE
Assistant United States Attorney
CA. Bar No. 208267
555 Fourth Street, N.W., Room 4237
Washington, D.C. 20530
(202) 514-7533

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing Government's Opposition to Defendant's Motion to Suppress Evidence and Statements was served by the Electronic Case Filing system and first-class United States mail, postage prepaid, on counsel for Defendant:

Rudolph Acree, Esquire
1211 Connecticut Ave N.W.
Suite 206
Washington, D.C. 20036

this 24th day of September, 2007.

      /s/
JOCELYN S. BALLANTINE
Assistant United States Attorney